**LINKAMERICA CORPORATION,**
**Appellant–Respondent,**

v.

**William Albert COX and Connie J.**
**Cox, Appellees–Petitioners.**

**No. 49A04–0411–CV–601.**

Court of Appeals of Indiana.

May 26, 2005.

---

Jan M. Carroll, Asina C. Grant, Barnes & Thornburg LLP, Indianapolis, IN, Attorneys for Appellant.

John Thrasher, Indianapolis, IN, Attorney for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

William and Connie Cox (collectively "the Coxes") sued Hi–Cube Express Ltd. ("Hi–Cube"), William's former employer, for breach of contract, personal injury, theft, and loss of consortium. The Coxes added LinkAmerica Corp. ("LinkAmerica") as a co-defendant because Hi–Cube is one of its subsidiaries. LinkAmerica appeals the trial court's denial of its Motion to Dismiss for Lack of Personal Jurisdiction. We find that both prongs of the personal jurisdiction test—compliance with this state's long-arm statute located in Indiana

Trial Rule 4.4(A) and federal due process under the Fourteenth Amendment to the United States Constitution—have been satisfied. Consequently, we affirm the trial court.

## Facts and Procedural History

In 2001, William, an Indiana resident, was an independent contractor who drove a truck for Hi–Cube, an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma. Hi–Cube was admitted to do business in Indiana and, in fact, operated a place of business in Indianapolis. As part of their business arrangement, William and Hi–Cube entered into a "Contract and Sale Agreement" for a 1992 semi-tractor. Under the terms of the contract, William was required to operate his truck pursuant to a separate lease and operating agreement that was attached to the contract. In February 2002, William was five weeks ahead on his weekly payments under the contract. That same month, however, Joseph Hopkins III, acting as president of Hi–Cube, terminated the operating agreement with William because of William's being late. Once William had been terminated, Hopkins ordered that the 1992 semi-tractor be repossessed despite the fact that William had consistently been timely on his payments and, indeed, was ahead on making payments. Hi–Cube reasoned that because the contract and sale agreement called for William to operate the truck pursuant to the operating agreement that had been terminated, William was in breach of the contract and sale agreement. Hi–Cube ceased operations on December 31, 2002.

In 2002, the Coxes sued Hi–Cube for breach of contract, personal injury, theft, and loss of consortium.[1] In 2003, the trial court granted the Coxes' motion for partial summary judgment on the issue of liability only as to the breach of contract and theft counts. Two weeks after the trial court's grant of partial summary judgment in their favor, the Coxes sought and were granted leave to amend their complaint and add LinkAmerica, an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma, as a co-defendant on the basis that Hi–Cube was a wholly-owned subsidiary of LinkAmerica.

Shortly thereafter, LinkAmerica removed the case from the Marion Superior Court to the United States District Court for the Southern District of Indiana. In front of the District Court, LinkAmerica moved to dismiss the action on the grounds that the court lacked personal jurisdiction over LinkAmerica. The Coxes filed a motion to remand the action to the Marion Superior Court, and this motion was granted. In front of the Marion Superior Court, LinkAmerica filed a Motion to Dismiss for Lack of Personal Jurisdiction, which the court denied in a one sentence Order without findings of fact or conclusions of law. Pursuant to Indiana Rule of Appellate Procedure 14(B), LinkAmerica moved to certify the court's order, which the trial court granted. This Court accepted jurisdiction.

## Discussion and Decision

The only issue presented by this interlocutory appeal is whether the Indiana trial court has personal jurisdiction over LinkAmerica. Personal jurisdiction is the court's power to bring a person into its adjudicative process and render a valid judgment over a person. *Brockman v. Kravic*, 779 N.E.2d 1250, 1254 (Ind.Ct. App.2002). When we review questions of

1. A copy of the complaint was not included in the record on appeal, thus we recite the counts as set forth in LinkAmerica's Brief.

The Coxes in their Brief do not dispute LinkAmerica's description of the counts in the complaint the Coxes filed against Hi–Cube.

whether personal jurisdiction exists, we employ a de novo standard of review. *Pozzo Truck Ctr., Inc. v. Crown Beds, Inc.,* 816 N.E.2d 966, 969 (Ind.Ct.App.2004); *see also Anthem Ins. Cos. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227, 1238 (Ind.2000).

■ LinkAmerica properly challenged the Indiana court's jurisdiction pursuant to Indiana Trial Rule 12(B)(2). *See Anthem,* 730 N.E.2d at 1231. Once LinkAmerica challenged the lack of personal jurisdiction, the Coxes had to present evidence that there was personal jurisdiction over LinkAmerica. *Id.* LinkAmerica, however, "bears the burden of proving the lack of personal jurisdiction by a preponderance of the evidence, unless the lack of jurisdiction is apparent on the face of the complaint." *Id.*

■ To determine whether personal jurisdiction exists in this state, courts employ a two-part test. First, the court determines if the defendant's contacts with Indiana fall under our equivalent of a long-arm statute, Indiana Trial Rule 4.4(A). *Id.* at 1232; *see also* Ind. Trial Rule 4.4(A). If this part is satisfied, the court must then determine whether the defendant's contacts satisfy federal due process analysis under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Anthem,* 730 N.E.2d at 1232; *see Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ("[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'").[2]

Regarding the first prong, Indiana Trial Rule 4.4(A) provides:

(A)Acts Serving as a Basis for Jurisdiction. Any person or organization that is a nonresident of this state, a resident of this state who has left the

---

2. The *Anthem* court was clear that Indiana has a two-part test because "[i]f the Indiana long-arm statute [Indiana Trial Rule 4.4(A)] were intended to be coextensive with the limits of personal jurisdiction under the Due Process Clause, it could be written with general language, such as the 'any constitutional basis' statutes used in several other states.... [T]he correct approach under Indiana Trial Rule 4.4(A) is to[ ] engage in a two-step analysis...." 730 N.E.2d at 1232. We note that Indiana Trial Rule 4.4(A) was amended effective January 1, 2003, after *Anthem* was decided, and as part of that amendment, the following language was added: "In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." *See Pozzo Truck Ctr., Inc. v. Crown Beds, Inc.,* 816 N.E.2d 966, 969 n. 2 (Ind.Ct.App.2004). The amended version of Rule 4.4(A) would apply to this case because LinkAmerica was brought into this lawsuit in July 2003. The amendment to Trial Rule 4.4(A) calls into question the continuing viability of the two-part test in Indiana because the Indiana long-arm statute seemingly now contains what the *Anthem* court referred to as "any constitutional basis" language. The majority in *Pozzo* posited that the two-part test remains in effect because "if Indiana's long-arm statute was intended to be coextensive with the limits of personal jurisdiction under the Due Process Clause, the enumerated acts listed in [Trial] Rule 4.4(A) could have been deleted and the Rule could have been rewritten with general language...." *Id.* In addition, our supreme court suggested that the two-part test remains in force post–2003 amendment to Trial Rule 4.4(A) as detailed in its opinion in *In re Paternity of A.B.,* 813 N.E.2d 1173, 1176 (Ind. 2004), when it recounted the trial court's use of the two-part test and then said that "[t]he trial court was correct." *Id.* In the instant case, we would reach the same result with the two-part test or with an examination of the limits of personal jurisdiction under the Due Process Clause, so we save for another day the continuing applicability of the two-part test post–2003 amendment to Trial Rule 4.4(A).

state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent:

(1) doing any business in this state;

(2) causing personal injury or property damage by an act or omission done within this state;

(3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state;

(4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state;

(5) owning, using, or possessing any real property or an interest in real property within this state;

(6) contracting to insure or act as surety for or on behalf of any person, property or risk located within this state at the time the contract was made;

(7) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in the state; or

(8) abusing, harassing, or disturbing the peace of, or violating a protective or restraining order for the protection of, any person within the state by an act or omission done in this state, or outside this state if the act or omission is part of a continuing course of conduct having an effect in this state.

In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States.

The first prong of the test—whether LinkAmerica's contacts with Indiana fall under Indiana Trial Rule 4.4(A)—received no detailed analysis from either LinkAmerica or the Coxes; both parties focused on the second prong's due process requirements. Thus, based upon the parties' failure to argue or cite authority, we can presume that the first prong has been satisfied and is not at issue in this case. *See* Ind. Appellate Rule 46(A)(8) (observing that the argument "shall contain the ... contentions why the trial court ... committed reversible error").

We now turn our attention to the second prong—whether asserting jurisdiction violates the Due Process Clause of the Fourteenth Amendment. This inquiry has two components: "minimum contacts" and "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154. First, in the analysis of the defendant's contacts, there are two concepts that courts use in their determination of whether the "minimum contacts" are satisfied: specific jurisdiction and general jurisdiction. *Anthem*, 730 N.E.2d at 1234. Specific jurisdiction is present if the defendant has contacts related to the subject matter of the lawsuit. *Id.* General jurisdiction exists if the defendant's contacts with the state are unrelated to the subject matter of the lawsuit. *Id.* In this case, both sides agree that "minimum contacts," if they can be established at all, must be established under the theory of specific jurisdiction. *See* Appellee's Br. p. 7; Appellant's Reply Br.

p. 2. The analysis of the contacts for specific personal jurisdiction is determined on a case-by-case basis. *Anthem,* 730 N.E.2d at 1235. The plaintiffs, in this case the Coxes, bear the burden of establishing "minimum contacts." *Brockman v. Kravic,* 779 N.E.2d 1250, 1257 (Ind.Ct.App. 2002).

■ Second, once the "minimum contacts" have been established, the issue becomes whether asserting personal jurisdiction over LinkAmerica would "offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154. After the plaintiffs establish that there are minimum contacts, the defendant, in this case LinkAmerica, carries the burden of proving that asserting jurisdiction is unfair and unreasonable. *Brockman,* 779 N.E.2d at 1257. In this inquiry, we determine whether the assertion of jurisdiction is reasonable and fair by balancing a number of factors, such as: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Id.* This fairness inquiry is separate from the contacts question and may be used to defeat jurisdiction even if the defendant has sufficient contacts with the forum state. *Id.*

■ We turn our attention to the first part of the federal due process inquiry—minimum contacts. Initially, we note that neither side suggests that the trial court lacked personal jurisdiction over Hi–Cube, nor did Hi–Cube. Hi–Cube is a subsidiary of LinkAmerica. Thus, the issue of LinkAmerica's contacts is dependent upon whether the subsidiary's contacts with the forum justify a finding of personal jurisdiction over the parent corporation. In this case, we conclude that Hi–Cube's contacts with Indiana justify a finding of personal jurisdiction over LinkAmerica.

■ One case from the United States District Court for the Southern District of Indiana is particularly helpful in our analysis of LinkAmerica's minimum contacts. *See Wesleyan Pension Fund, Inc. v. First Albany Corp.,* 964 F.Supp. 1255 (S.D.Ind. 1997).[3] The court explained that courts traditionally "presume that a parent and a subsidiary are institutionally independent when determining whether a subsidiary's contacts with the forum may justify assertion of personal jurisdiction over the parent." *Id.* at 1261; *see generally Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 336, 45 S.Ct. 250, 69 L.Ed. 634 (1925) (explaining that "use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction"). The Coxes, may overcome this presumption—and consequently demonstrate that because of Hi–Cube's contacts in the jurisdiction, personal jurisdiction over LinkAmerica is proper—by clear evidence showing: (1) that LinkAmerica utilized Hi–Cube in such a way that an agency relationship can be perceived; or (2) that LinkAmerica has greater control over Hi–Cube than normally associated with common ownership and directorship; or (3) that Hi–Cube was "merely an empty shell." *Id.* at 1261–62;

---

3. In its Reply Brief, LinkAmerica characterizes *Wesleyan* as "irrelevant" because according to LinkAmerica, the issue in *Wesleyan* was general jurisdiction. *See* Appellant's Reply Br. p. 7. This is not so as the *Wesleyan* court itself states: "[W]e focus exclusively on the question of specific jurisdiction." *See Wesleyan,* 964 F.Supp. at 1259. Moreover, the *Wesleyan* court specifically found that any argument on general jurisdiction had been waived. *Id.*

*see also Anthem,* 730 N.E.2d at 1240 n. 17 (stating these factors).

The *Wesleyan* court found that the presumption was overcome where the plaintiffs presented evidence that: (1) the subsidiaries' and the parent corporation's principal place of business was located at the same address; (2) the subsidiaries' and the parent corporation's telephone number was the same; and (3) the same two people are the sole directors and are either president or vice-president of both the subsidiaries and the parent corporation. In this case, the Coxes presented similar, and indeed more compelling, clear evidence as to the relationship between LinkAmerica and Hi–Cube. First, LinkAmerica and all of its subsidiaries, including Hi–Cube, have the same address. Appellee's App. p. 23. Second, the Board of Directors for LinkAmerica and Hi–Cube (as well as one of LinkAmerica's other subsidiaries, Danny Gilder, Inc.) were the same as detailed below:

|  | LinkAmerica | Hi-Cube | Danny Gilder, Inc. |
| --- | --- | --- | --- |
| Chairman of the Board | Roger B. Collins | Roger B. Collins | Roger B. Collins |
| Director | James E. Rushing | James E. Rushing | James E. Rushing |
| Secretary | Anthony Allen | Anthony Allen | Anthony Allen |
| Secretary of the Corporation | Anthony Allen | Anthony Allen | Anthony Allen |

*Id.* at 47 (information from February 2002). Third, the annual shareholder's[4] meetings for LinkAmerica and Hi–Cube were held at the same place, on the same day in 2000, 2001, and 2002. *Id.* at 35–43. In all three years, LinkAmerica's meeting was held in the morning and Hi–Cube's in the afternoon. *Id.* In all three years, the same three people—Collins, Rushing, and Allen—were the only individuals present at the meetings. *Id.* Fourth, LinkAmerica paid Hi–Cube's legal fees from March 2002 through May 2003.[5] Fifth, Hi–Cube's checks said that Hi–Cube was "a LinkAmerica Company." Appellee's Br. p. 5; Appellant's Reply Br. p. 1. All of these factors lead us to the conclusion that the Coxes have established by clear evidence that, pursuant to *Wesleyan,* assertion of personal jurisdiction over LinkAmerica was appropriate.

■ We must now consider the second prong of the due process analysis—whether asserting personal jurisdiction over LinkAmerica is fair and reasonable. Because the minimum contacts have been established, it is now LinkAmerica's burden to show that asserting jurisdiction is unfair and unreasonable. In examining the fairness and reasonableness of exerting personal jurisdiction over LinkAmerica, there are five factors that are used: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiffs interest in obtaining convenient and effective relief; (4) the inter-

4. This is in the singular because the documents of record show that the only shareholder present for LinkAmerica and Hi–Cube during 2000, 2001, and 2002 was Collins. Moreover, Collins was listed in the minutes of LinkAmerica's and Hi–Cube's annual meeting as "representing LinkAmerica Corporation." *See* Appellee's App. p. 35–43.

5. In their Brief, the Coxes cite to the Record, which was not provided in the materials sent to this Court. LinkAmerica did not dispute this allegation and replied only that "It simply does not matter ... who pays attorneys [sic] fees of Hi–Cube to defend the Coxes' lawsuit...." Appellant's Reply Br. p. 4.

state judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Brockman,* 779 N.E.2d at 1257.

First, LinkAmerica has made no argument that defending a lawsuit in Indiana would be burdensome. We further note that "with the advancements in travel and communication technology, defending oneself in another state than where one resides is not as severe a burden as it once was." *Saler v. Irick,* 800 N.E.2d 960, 970 (Ind.Ct.App.2003). Second, as to Indiana's interest in adjudicating the lawsuit, our supreme court has explained, "Indiana has an interest in seeing its residents ... protected from fraud." *Anthem,* 730 N.E.2d at 1240. Indiana has a related interest in seeing its residents protected in employment-related and contractual disputes. Third, the Coxes, as Indiana residents and the plaintiffs in this suit, have an interest in obtaining convenient and effective relief in Indiana, because while Cox was employed by an out-of-state company, he made such employment arrangements from his home state of Indiana. Fourth, Indiana would provide an efficient resolution of the controversy as this is not a situation where litigation has already started on this case in another state. *See, e.g., Am. Econ. Ins. Co. v. Felts,* 759 N.E.2d 649, 659 (Ind.Ct.App.2001) (holding that Indiana would not provide the most efficient resolution of the controversy because an Illinois court was already addressing the precise issue sought to be litigated in Indiana). Finally, LinkAmerica has proffered no fundamental social policies at issue in this case. *See id.* LinkAmerica has failed to present a compelling case that it would be unfair and unreasonable for an Indiana court to exercise jurisdiction over it. Overall, we find that exercising jurisdiction over LinkAmerica would not offend notions of fairness and reasonableness.

In sum, we find that the two-prong test for personal jurisdiction—Indiana Trial Rule 4.4(A) and the federal due process analysis—has been satisfied. Consequently, an Indiana court may properly exercise personal jurisdiction over LinkAmerica. The trial court did not err in denying LinkAmerica's Motion to Dismiss for Lack of Personal Jurisdiction.

Affirmed.

SHARPNACK, J., and MAY, J., concur.