**Andre L. LAFLAMME, Appellant–
Respondent,**

v.

**Carrie GOODWIN, Appellee–Petitioner.**

No. 48A02–0902–CV–165.

Court of Appeals of Indiana.

Aug. 20, 2009.

Carol Sparks Drake, Lewis & Kappes, Zionsville, IN, Joseph P. Rompala, Lewis & Kappes, Indianapolis, IN, Attorneys for Appellant.

## OPINION

FRIEDLANDER, Judge.

Andre Laflamme appeals the trial court's order refusing to set aside a default judgment that modified a California child support order. Laflamme presents two issues for our review, one of which we find dispositive: Did the trial court have personal jurisdiction over Laflamme?

We reverse and remand.

Laflamme and Carrie (Laflamme) Goodwin were married in California on July 18, 1987. One child, Amanda, was born of the marriage on July 19, 1990. Goodwin filed for divorce in Napa County, California on February 4, 1992. In March 1993, the Napa County Superior Court approved the parties' settlement agreement that included provisions for custody and imposed a child support obligation on Laflamme of $350.00 per month "until the child reaches age 18, or if still a full-time high-school student, to age 19...." *Appendix* at 24.

After the divorce was final, both Laflamme and Goodwin moved from the State of California. In March 1997, Goodwin moved with the couple's daughter to Indiana. Laflamme has never lived in Indiana and currently resides in Arizona. On August 25, 1999, Goodwin filed with the Madison County Superior Court a "Verified Complaint to Domesticate Foreign Decree of Dissolution". *Id.* at 6. Following a brief hearing on November 29, 1999, at

which Laflamme was not present in person or by counsel,[1] the trial court issued an order stating that the California dissolution decree and "all subsequent orders" were "domesticated to the State of Indiana, adopted as an Indiana judgment, entitled to full faith and status as a judgment." *Id.* at 54.

On April 9, 2008, Goodwin filed a "Petition to Continue Child Support and to Modify Child Support to Include Post Secondary Educational Expense" in the Madison County Superior Court. *Id.* at 55. In the petition, Goodwin sought continuation of Laflamme's support obligation beyond Amanda's 18th birthday. Goodwin also requested modification of Laflamme's support obligation to include post-secondary education expenses "in accordance with the laws of Indiana. . . ." *Id.* at 56. At the time, Amanda was completing her senior year of high school and was making plans to attend Anderson University.

On May 19, 2008, the trial court posted an entry on the chronological case summary noting receipt of a letter from Laflamme dated May 13, 2008. In the letter, Laflamme stated "[a]s I am not a resident of Indiana I do not acknowledge Indiana jurisdiction in this matter" and expressed his belief that "any modifications must go back to California per our final divorce judgment." *Id.* at 57. A copy of this letter was also sent to Goodwin's counsel. Despite Laflamme's protest, the trial court set a hearing on Goodwin's petition to modify support for July 10, 2008, and issued a subpoena to Laflamme at his address in Arizona. The subpoena was returned unclaimed on July 31, 2008.

On July 10, 2008, the court held the hearing as scheduled on Goodwin's petition to modify support. Laflamme did not appear nor was he represented by counsel. At the start of the hearing, Goodwin's attorney noted for the court that Laflamme had contested the court's jurisdiction. The court nevertheless proceeded with the hearing. During the hearing, Goodwin testified that she was seeking to extend Laflamme's current support obligation while their daughter attended college and to impose an additional obligation on Laflamme to contribute to post-secondary educational expenses associated therewith. At the conclusion of the hearing, and in a second petition filed shortly after the hearing, Goodwin asked the court to find that Laflamme had defaulted in the matter and to grant her request for modification.

On August 13, 2008, the trial court issued an order modifying Laflamme's support obligation. Specifically, the court ordered Laflamme to pay "$99.05 per week as his obligation for child support and post secondary educational expenses. . . ." *Id.* at 61. After this order was issued, the court received a letter from Laflamme in which he stated that he had "no record of any notification of any court hearing on July 10, 2008." *Id.* at 62. Laflamme acknowledged sending "cards, letters and gifts" to his daughter in the past, but further noted that he had not heard from Goodwin or his daughter in years. *Id.*

On October 9, 2008, Goodwin filed a motion for assignment of Laflamme's wages, which the trial court granted. On October 29, 2008, Laflamme, by counsel, appeared in the action and filed a Verified Motion to Set Aside Default Judgment and Dismiss Case, in which he argued that the court's August 13 order was void for lack of personal jurisdiction over him. *See* Ind.

---

1. The chronological case summary indicates that Laflamme received notice of the proceedings and the date and time of the hearing.

Trial Rule 60(B)(6). The court issued an order denying Laflamme's motion to set aside the default judgment. Laflamme now appeals.

Initially, we note that Goodwin did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments for her and we apply a less stringent standard of review with respect to showings of reversible error. *Murfitt v. Murfitt*, 809 N.E.2d 332 (Ind.Ct.App.2004). That is, we may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. *Id.*

T.R. 60(B) provides the mechanism for a party to obtain relief from the entry of a final judgment. The decision of whether to grant or deny a motion for relief from judgment is generally left to the sound, equitable discretion of the trial court. *Wolvos v. Meyer*, 668 N.E.2d 671 (Ind.1996). This general rule, however, does not apply in a case seeking review of the denial of a T.R.60(B) motion alleging that a judgment is void. *Hotmix & Bituminous Equip. Inc. v. Hardrock Equip. Corp.*, 719 N.E.2d 824 (Ind.Ct.App.1999). This is so because determining whether a judgment is void "requires no discretion on the part of the trial court because either the judgment is void or it is valid." *Id.* at 826.

Laflamme argues that the trial court's default judgment must be set aside and the action dismissed because the trial court lacked personal jurisdiction over him. "Personal jurisdiction is the court's power to bring a person into its adjudicative process and render a valid judgment over a person." *Brockman v. Kravic*, 779 N.E.2d 1250, 1254 (Ind.Ct.App.2002). "The existence of personal jurisdiction over a defendant is a constitutional requirement to rendering a valid judgment, mandated by the Due Process Clause of the Fourteenth Amendment." *Anthem Ins. Cos. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1237 (Ind.2000). Personal jurisdiction either exists or it does not, and its existence is a question of law that we review de novo. *Anthem Ins. Cos. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227. Accordingly, we owe no deference to the trial court's determination that it had jurisdiction over Laflamme. *Id.*

A challenge to personal jurisdiction may be raised either as an affirmative defense in the answer to the complaint or in a motion to dismiss. *Johnston v. Johnston*, 825 N.E.2d 958 (Ind.Ct.App.2005). In either case, once the party contesting jurisdiction challenges the lack of personal jurisdiction, the plaintiff must present evidence to show that there is personal jurisdiction over the defendant. *Id.* The defendant, however, bears the burden of proving the lack of personal jurisdiction by a preponderance of the evidence, unless the lack of jurisdiction is apparent on the face of the complaint. *Id.*

Indiana has adopted the Uniform Interstate Family Support Act (UIFSA), which provides a mechanism for cooperation between state courts in enforcing duties of support. *Id.* UIFSA provides that an Indiana court may exercise jurisdiction over nonresidents under the following circumstances:

> In a proceeding to establish, enforce, or modify a support order or to determine paternity, an Indiana tribunal may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:
>
> (1) the individual is personally served with notice in Indiana;
>
> (2) the individual submits to the jurisdiction of Indiana by:
>
> (A) consent;

(B) entering an appearance, except for the purpose of contesting jurisdiction; or

(C) filing a responsive document having the effect of waiving contest to personal jurisdiction;

(3) the individual resided in Indiana with the child;

(4) the individual resided in Indiana and has provided prenatal expenses or support for the child;

(5) the child resides in Indiana as a result of the acts or directives of the individual;

(6) the individual engaged in sexual intercourse in Indiana and the child:

(A) has been conceived by the act of intercourse; or

(B) may have been conceived by the act of intercourse if the proceeding is to establish paternity;

(7) the individual asserted paternity of the child in the putative father registry administered by the state department of health under IC 31–19–5; or

(8) there is any other basis consistent with the Constitution of the State of Indiana and the Constitution of the United States for the exercise of personal jurisdiction.

Ind.Code Ann. § 31–18–2–1 (West, PREMISE through Public Laws approved and effective through 4/20/2009). Notwithstanding the above, however, our Supreme Court has also determined that a judgment entered without "minimum contacts" violates the due process clause of the Fourteenth Amendment. *In re Paternity of A.B.*, 813 N.E.2d 1173 (Ind.2004). Quoting its decision in *Stidham v. Whelchel*, 698 N.E.2d 1152, 1154 (Ind.1998), the court noted: " 'A court simply has no power over persons who have no contact with their territory, unless and until there is a response or an appearance and the lack of personal jurisdiction is not protested.' " *In re Paternity of A.B.*, 813 N.E.2d at 1175.

In the present case, there is no question that the circumstances set forth in subsections 1, 2(A) and (B), and 3 through 7 are not present in this case. We therefore consider whether the trial court attained personal jurisdiction over Laflamme under either subsection 2(C) or 8.

 In a response to Laflamme's motion to set aside the default judgment and to dismiss the action, Goodwin argued that Laflamme waived any contest to personal jurisdiction when he sent two letters to the trial court, which Goodwin maintained constituted "responsive documents." *See* I.C. § 31–18–2–1(2)(C). As noted above, in his first letter to the trial court, Laflamme expressly contested the Indiana court's exercise of jurisdiction.[2] Laflamme's second letter was sent two weeks *after* the trial court entered the order modifying his child support obligation. In this letter, Laflamme did not expressly request affirmative relief, nor could this letter have provided the court with personal jurisdiction over Laflamme to enter the earlier default judgment modifying Laflamme's child support obligation. Given the content of the first letter and the timing of the second, we conclude that Laflamme's letters did not have the effect of waiving Laflamme's right to contest personal jurisdiction. *See, e.g., Johnston v. Johnston*, 825 N.E.2d 958 (in proceeding to modify foreign support decree, father's submission of motion to dismiss based on

---

**2.** We also observe that at the start of the July 10 hearing, counsel for Goodwin advised the court that Laflamme contested the court's jurisdiction, referring specifically to Laflamme's letter.

grounds of improper procedure, emancipation, and laches and discovery requests related to the merits of the action did not constitute submission to the court's exercise of jurisdiction under UIFSA).

■■■■■ The only other provision under which the Indiana court could have obtained personal jurisdiction over Laflamme under UIFSA is under subsection (8), "any other basis consistent with the Constitution of the State of Indiana and the Constitution of the United States for the exercise of personal jurisdiction." The Due Process Clause of the Fourteenth Amendment and article 1, section 12 of the Indiana Constitution require that before a court may exercise personal jurisdiction over a party, that person must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Anthem Ins. Cos. v. Tenet Healthcare Corp.*, 730 N.E.2d at 1233 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The contacts to be examined "must be the purposeful acts of the defendant, not the acts of the plaintiff or any third parties." *Id.* at 1234.

■■■■ Our analysis as to whether personal jurisdiction exists under the Due Process Clause is guided by a two-part test. We first consider the contacts between the defendant and the forum state to determine if they are sufficient to establish that the defendant could reasonably anticipate being hauled into court there. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). If the contacts are sufficient, then we must evaluate whether the exercise of personal jurisdiction offends " 'traditional notions of fair play and substantial justice' by weighing a variety of interests." *Id.* (quoting *Burger King*

*Corp. v. Rudzewicz*, 471 U.S. at 476, 105 S.Ct. 2174).

In this case, there are no contacts sufficient to establish personal jurisdiction over Laflamme. Laflamme has never lived in Indiana and the couple's daughter was not conceived in Indiana. Laflamme's only contacts with Indiana include sending "cards, letters and gifts" to his daughter in the past, responding to Goodwin's request that he continue paying child support and assist in paying post-secondary education expenses for the couple's daughter, and paying child support pursuant to the California court's order. *Appendix* at 62. We agree with Laflamme that none of these contacts constitute acts of "purposefully avail[ing himself] of the privilege of conducting activities within [Indiana], thus invoking the benefits and protections of [Indiana's] laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Laflamme's contacts with Indiana were incidental to Goodwin's decision to move to this state with Amanda and too attenuated to subject him to the jurisdiction of Indiana courts. *See Hotmix & Bituminous Equip. Inc. v. Hardrock Equip. Corp.*, 719 N.E.2d 824 (finding no minimum contacts despite communication through interstate telephone calls and letters that culminated in a business relationship).

■■■■ We address one other argument made by Goodwin in support of the court's exercise of personal jurisdiction over Laflamme. The fact Laflamme did not contest personal jurisdiction when the Indiana court domesticated the California divorce decree in 1999 does not serve as a valid waiver of his right to now contest the Indiana court's exercise of personal jurisdiction over him for purposes of modifying his child support. In this same vein, choosing not to challenge personal jurisdiction at the time of the domestication order

does not render Laflamme's present challenge to the court's exercise of personal jurisdiction untimely. As our Supreme Court has recognized, "[i]t is a bold move, but an option available to a nonresident is to ignore a pending proceeding and take the risk that a subsequent challenge to personal jurisdiction will prevail." *Stidham v. Whelchel*, 698 N.E.2d at 1156. It was Laflamme's prerogative to not challenge the court's domestication of the California divorce decree (and part and parcel therewith, registration of the child support order) in 1999. Indeed, this action by the Indiana court served only to give the court the authority to assist with the enforcement of the original child support order if the need arose.

In short, we conclude the trial court lacked personal jurisdiction over Laflamme under UIFSA. Consequently, the court's default judgment and order modifying Laflamme's child support obligation are void. Therefore, the trial court erred in refusing to set aside the default judgment and dismiss the action. The judgment of the trial court is reversed, and this cause is remanded with instructions that Goodwin's request for modification be dismissed.

Judgment reversed and remanded.

BAKER, C.J., and RILEY, J., concur.